

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00028-CR

_____

GEORGE HENRY WILLIAMS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 2nd Judicial District Court
Cherokee County, Texas
Trial Court No. 17,188

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

## OPINION

George Henry Williams, Jr.,[1] and his wife, Peggy, frequently kept Peggy's granddaughter, J.A., when J.A.'s mother had to be at work at 5:30 a.m. In February 2008, J.A. made an outcry allegation that, when her mother left her with the Williamses on those occasions Williams sexually abused her. Williams was indicted and convicted for the offense of continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02 (Vernon Supp. 2009). This is a relatively new statute, enacted during the 2007 legislative session.[2] Williams was convicted by a Cherokee County[3] jury and sentenced to thirty-five years' incarceration. After reviewing the record, the applicable law, the briefs, and the oral arguments, we affirm the judgment of the trial court, because (1) legally and factually sufficient evidence supports the jury's verdict (points of error 1, 2, 3, and 4); (2) the trial court did not err in denying Williams' requested jury charge (point of error 7); and (3) Williams failed to preserve any complaint that the statute is unconstitutional (points 5, 6, and 8).

---

[1]George Williams is referred to in this opinion as Williams.

[2]In pertinent part, the statute criminalizes committing two or more acts of sexual abuse against a child younger than fourteen years of age, where the actor is seventeen or older, and the abusive acts take place over a span of thirty or more days. "Acts of sexual abuse" are listed in the statute, and include sexual and aggravated sexual assault and indecency with a child by contact, among other acts not relevant here. The crime is a felony of the first degree, with a range of punishment of not less than twenty-five years, not more than ninety-nine years. *See* TEX. PENAL CODE ANN. § 21.02.

[3]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

First, we review a bit more of the background of this case. The State alleged Williams engaged in an ongoing sexually abusive relationship with his step-granddaughter, J.A. At the time of trial, Williams had been married to Peggy for about twenty-seven or twenty-eight years. Peggy is the mother of Pamela King, who is the mother of J.A. During the months of September 2007 through January 2008 (the period alleged in the indictment), King regularly worked the hours of 5:30 a.m. to 1:30 p.m. King delivered J.A. to the Williamses' house about 5:10 a.m. each of the mornings she was working. After King had gone on to work, J.A. would get in bed with the Williamses. After a while, Peggy would get up to make breakfast, leaving J.A. in bed alone with Williams. It was then that the abuse reportedly occurred.

Eventually J.A. told her cousin K.R. of the abuse, who then told her mother, LaTonya Roberts,[4] who then told King. King asked J.A. about the allegations, and J.A. told King what Williams had done to her. When King asked J.A. how many times Williams had engaged in the sexual abuse, J.A. said, "just about every time [J.A.] went out there" to the Williamses' home. King said that J.A. demonstrated to King what Williams had done.

At trial, J.A. testified that, when she was alone in the bed with Williams, "He put his finger in [her] middle and his private in [her] bottom," and he did this "[m]ore than twice."[5] A

---

[4]Roberts is the sister of Peggy.

[5]J.A. testified to her body parts and adequately identified them; Williams does not contest this on appeal.

video-recorded forensic interview with J.A. was played for the jury, in which J.A. made similar accusations, saying Williams touched her inside her middle and bottom with his finger more than once.

*(1)      Legally and Factually Sufficient Evidence Supports the Jury's Verdict*

Points of error 1 and 2 complain, respectively, of the legal and factual sufficiency of the evidence to establish that the abuses alleged by the State took place over a span of thirty or more days. The State's indictment tracked the language of Section 21.02 of the Texas Penal Code, alleging that Williams, "during a period that was thirty (30) days or more in duration, committed two or more acts of sexual abuse against" J.A. C*f.* TEX. PENAL CODE ANN. § 21.02(b)(1). Williams claims there was insufficient evidence to prove that any abuse, if it did occur, happened over a span of thirty or more days.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light instead of the light most favorable to the verdict. We determine whether the evidence supporting the verdict is either too weak to support the fact-finder's verdict, or, considering conflicting

4

evidence, is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong and manifestly unjust. *Laster*, 275 S.W.3d at 518; *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007).

In this analysis, we use a hypothetically correct jury charge to evaluate both the legal and factual sufficiency of evidence. *Grotti v. State*, 273 S.W.3d 273 (Tex. Crim. App. 2008). Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State*, 286 S.W.3d 321(Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

To convict Williams under this statute, the State had to prove four elements:

(1)    Williams committed two or more acts of sexual abuse;
(2)    over a span of thirty days or more;
(3)    against J.A.; and
(4)    that at the time of the sexual abuse Williams was seventeen years of age or older and J.A. was younger than fourteen years of age.

Sexual abuse could have been proved by proving aggravated sexual assault of a child or indecency with a child. To prove aggravated sexual assault of a child, the State had to present evidence that J.A. was younger than seventeen years of age and that Williams penetrated J.A.'s sexual organ with his finger. TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2009). To prove indecency with a child, the State would have had to present evidence Williams touched any part of J.A.'s

5

genitals with Williams' hand or finger, with the intent to arouse or gratify Williams' sexual desire.[6] TEX. PENAL CODE ANN. § 21.11(a) (Vernon Supp. 2009).

The child victim, J.A., was seven years old at trial; she testified that Williams "put his finger in [her] middle and his private in [her] bottom." J.A. described her "middle" and "bottom" as the private parts of her body from which she urinated and defecated, respectively. She said that Williams did these acts "more than twice." In the forensic interview, J.A. said the abuse happened more than once. J.A. was not, however, able to speak to the span of time over which these abuses occurred.[7] However, J.A.'s mother, King, said she asked J.A., "How many times did he do that to you?" J.A. replied (according to King's testimony), "Just about every time that I went out there to stay with grandmother." King testified that, as part of her normal habit or routine, whenever she went to work early in the morning, J.A. went to stay with the Williamses, and King regularly worked these early morning shifts during the five-month period alleged in the indictment. J.A. told the sexual assault nurse examiner (SANE) who examined J.A. that the abuse occurred more than once.

Based on this summarized testimony, a rational trier of fact could have found that Williams committed two or more acts of sexual abuse over a span of thirty or more days; the evidence is legally sufficient to establish that element of the offense. Likewise, we find the

---

[6]Obviously, these are not the exclusive means of committing these offenses, but these are the means alleged in the indictment. *See generally* TEX. PENAL CODE ANN. § 21.11 (Vernon Supp. 2009), § 22.021.

[7]Arguably this is precisely the kind of situation the Legislature considered when enacting Section 21.02 of the Texas Penal Code. *See Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring).

evidence factually sufficient. The evidence supporting the jury's verdict is not so weak as to be clearly wrong or unjust. As regards evidence contrary to the verdict, Williams took the stand and denied J.A.'s accusations. He presented two of J.A.'s teachers who said that they had detected no disciplinary problems or mood swings in the child in or after the period over which the alleged abuse occurred. He points out that the SANE detected no evidence of physical trauma when she examined J.A.; though she also pointed out this was not in anyway unusual based on J.A.'s allegations. To the extent this evidence conflicts with the jury's verdict, it cannot be said the verdict is against the great weight and preponderance of the evidence proffered by Williams. Accordingly, the first two points of error are overruled.

In his third and fourth points of error, Williams claims the evidence is legally and factually insufficient to support a finding that, if he engaged in sexual contact with J.A., he did it to arouse or gratify the sexual desire of any person. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). As pointed out earlier, Section 21.02 defines the offense of continuous sexual assault as committing any of the enumerated penal code violations two or more times over thirty or more days. Two of the potential offenses listed, and the two alleged by the State in the indictment, are the offenses of

> **Indecency with a Child**, by touching any part of the genitals of [J.A.] with the defendant's hand or finger, with the intent to arouse or gratify the defendant's sexual desire;[8] AND/OR **Aggravated Sexual Assault of a Child**, namely, caused the penetration of the female sexual organ of [J.A.], with the defendant's finger.[9]

---

[8]*See* TEX. PENAL CODE ANN. § 21.11(a)(1).

[9]*See* TEX. PENAL CODE ANN. § 22.021.

7

Thus, it was necessary for the State to prove that Williams committed aggravated sexual assault two or more times; indecency with a child by contact two or more times; or that Williams committed at least one act of aggravated sexual assault and at least one act of indecency with a child; that these acts were committed against J.A.; and the acts were committed over a span of thirty or more days.

Obviously, the indictment would be proved if the State proved Williams committed two or more acts of aggravated sexual assault against J.A. over the statutory time span. When J.A. described the abuse, she said that Williams "put his finger in [her] middle," by which she meant her vagina, or where she went "peepee"; and "his private in [her] bottom." Leaving aside for the moment the second part of that allegation (which was not alleged in the indictment), the first part clearly claims Williams did what was alleged in the indictment as aggravated sexual assault, that the defendant did "cause the penetration of the female sexual organ of [J.A.], with the defendant's finger." This evidence is sufficient to prove that Williams committed aggravated sexual assault against J.A. *Cruz v. State*, 238 S.W.3d 389, 395 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (testimony of victim, standing alone, sufficient to support conviction for sexual assault). Bearing in mind our analysis of Williams' first two points of error, there was legally and factually sufficient evidence to support a verdict that Williams committed continuous sexual assault by committing two or more acts of aggravated sexual assault. Thus, any complaint that there is

8

insufficient evidence of intent to arouse or gratify the sexual desire of any person, an element of indecency with a child, is moot.

Nonetheless, there was still sufficient evidence from which the jury could find intent to arouse or gratify Williams' sexual desire. The specific intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, or all the surrounding circumstances. *Couchman v. State*, 3 S.W.3d 155, 163 (Tex. App.—Fort Worth 1999, pet. ref'd). An oral expression of intent is not required, and a defendant's conduct alone is sufficient to infer intent. *Id.*; s*ee also Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd) ( jury could infer intent to arouse or gratify sexual desire from defendant's act of touching child's genitals). Furthermore, intent can be inferred from the appellant's conduct after the incident. *Couchman*, 3 S.W.3d at 163. Williams' niece, Evette Hart, called Williams when she heard about J.A.'s allegations. She said Williams did not deny the charges or seem surprised: "he was just, just really quiet . . . it's like he didn't seem surprised. He just seemed like he was caught."

We have enunciated the standards for legal and factual sufficiency above. We find evidence sufficient under both standards; Williams' third and fourth points of error are overruled.

*(2)    The Trial Court Did Not Err in Denying Williams' Requested Jury Charge*

In his seventh point of error Williams argues the trial court erred by not granting Williams' request for a special issue jury instruction.[10] Williams argues that the trial court's charge to the

---

[10]In Williams' brief, he urges three points of error in one section; points five and six complain Section 21.02 of the Texas Penal Code is unconstitutional. Point seven, as we have said, complains of the denial of a jury instruction.

9

jury allowed the jury to return a nonunanimous verdict. This, reasons Williams, amounted to a violation of his due process rights.

The Texas Code of Criminal Procedure requires unanimous verdicts in criminal cases. TEX. CODE CRIM. PROC. ANN. art. 36.29(a). Although it does not use the term "unanimous," the Texas Constitution likewise guarantees a defendant's right to a unanimous verdict in criminal cases. TEX. CONST. art. V, § 13; *Brown v. State*, 508 S.W.2d 91, 93 (Tex. Crim. App. 1974). In his appellate brief, Williams claims Section 21.02 of the Texas Penal Code permits a verdict to be returned which is not the unanimous decision of the jury. Williams is referring to the subsection of Section 21.02 which provides:

> (d)     If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

TEX. PENAL CODE ANN. § 21.02(d). Williams further argues that, because the jury could have reached a nonunanimous verdict, his due process rights were violated, though he does not explain how this alleged lack of unanimity amounts to a due process violation. *See* TEX. R. APP. P. 38.1(i) (appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

---

Almost all of the briefing and argument in this section of Williams' brief claims that Section 21.02 allows a jury to return a verdict without being unanimous. Thus, reasons Williams, he has been denied his due process right to a unanimous verdict. See TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29 (Vernon Supp. 2009). Williams' arguments that Section 21.02 is unconstitutional have not been preserved for our review.

The thrust of Williams' argument seems to be that, because Section 21.02 of the Texas Penal Code states that a jury need not be unanimous in deciding which abusive acts were perpetrated or when they occurred, such provision violated Article 36.29's requirement of unanimity. However, this is not the complaint Williams made to the trial court. Williams asked the trial court to include the following instruction in the charge to the jury:

> We the jury unanimously find that the defendant, G.W., during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.
>                           Yes / no
>
>
>                                                        _____
>                                                        Jury Foreperson

The trial court denied this request. The submitted charge, though, contained the following:

> In order to find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. However, in order to find the defendant guilty of the offense of continuous sexual abuse of a young child, you must **agree unanimously** that the defendant, during a **period that is 30 or more days in duration** beginning on or after September 1, 2007, through on or about January 30, 2008, **committed two or more acts of sexual abuse.**

(Emphasis added.) Williams does not explain, and we cannot discern, how the instruction he requested differs substantially from the instruction given. The charge given goes on to accurately define "acts of sexual abuse" using the statutory definitions in the Texas Penal Code for indecency with a child and aggravated sexual assault. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.021. Although he asked the trial court to use his instruction and submit it as a special issue, the charge

11

actually submitted requires the same finding as the instruction Williams sought:   both instructions require a unanimous finding that Williams perpetrated two or more acts of sexual abuse over thirty or more days.   To the extent Williams wanted the jury to be unanimous on which acts occurred on what dates, he did not ask the trial court to submit such an instruction and thus has not preserved that complaint for appellate review.   TEX. R. APP. P. 33.1.

Williams' briefing on this point is unclear.   If he is complaining the trial court did not submit the requested charge language proffered by Williams, the charge given adequately tracked the statutory language and was substantially the same as the one Williams requested.   To the extent he complains the jury was not required to be unanimous on which abusive acts occurred and when, that complaint was not preserved.   We overrule the seventh point of error.

*(3)      Williams Failed to Preserve any Complaint that the Statute Is Unconstitutional*

In his fifth, sixth, and eighth points of error, Williams claims Section 21.02 of the Texas Penal Code is unconstitutional in three different ways:   on its face because it subjects a defendant to a nonunanimous verdict (point of error 5); as applied to Williams because it subjected him to a conviction by less than a unanimous verdict (point of error 6); and on its face because the statute subjects a defendant to conviction for offenses which would otherwise be barred by the statute of limitations (point of error 8).

Williams made no objection to the trial court about the constitutionality of Section 21.02 of the Texas Penal Code.[11] Failure to object that a statute is unconstitutionally vague, as applied to a defendant, waives any appellate review of that complaint. *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (holding appellant waived his challenge to statute as vague as applied because he did not specifically object at trial); *Fluellen v. State*, 104 S.W.3d 152, 167 (Tex. App.—Texarkana 2003, no pet.) ("A constitutionality challenge based on application to the defendant's case cannot be raised for the first time on appeal."). Similarly, the Texas Court of Criminal Appeals recently held that a claim a statute is void on its face must also be preserved by trial objection. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Williams has therefore not preserved for review his fifth, sixth, or eighth points of error.[12] They are accordingly overruled.

---

[11]At oral argument, Williams claimed the error was so severe as to warrant review. We are not persuaded by this argument, in the face of clear rulings by the Texas Court of Criminal Appeals and the lack of any argument or authority by Williams in support of this assertion.

[12]We are not without concern regarding this statute. We recognize that several states, for more than a decade, have had similarly structured statutes outlawing the offense of "continuous sexual assault of a child," and the high courts of most of those states have found the statutes to pass constitutional muster. *See State v. Ramsey*, 124 P.3d 756, 763—66 (Ariz. 2005); *People v. Jones*, 792 P.2d 643 (Cal. 1990); *State v. Fortier*, 780 A.2d 1243, 1252 (N.H. 2001); *People v. Calloway*, 672 N.Y.S.2d 638, 642—43 (N.Y. Co. Ct. 1998); *State v. Johnson*, 627 N.W.2d 455, 460—61 (Wis. 2001). We are still left, though, wondering, as we asked counsel at oral argument, what is this Court to review, where, as here, arguably the jury did not have to agree exactly what abuses occurred when? We anticipate the State would answer that this situation is analogous to *Jefferson v. State*, 189 S.W.3d 305 (Tex. Crim. App. 2006), where multiple methods of committing the offense of injury to a child were alleged; the court affirmed the conviction because, whether the injury was caused by an "act" or an "omission" was not an element of the crime—the element was injury, which could have been caused either by act or omission. *Jefferson,* 189 S.W.3d at 312—14. Section 21.02 of the Texas Penal Code may well fall within the reasoning of *Jefferson*, *Schad v. Arizona*, 501 U.S. 624, 643—45 (1991), and similar cases. Based on the failure to preserve error, state of briefing and arguments presented, we do not reach these issues in the instant case. As of this writing, we are aware of only one appellate decision, unpublished, addressing Section



21.02, and the issues of constitutionality or unanimity were not raised.  *See Enriquez v. State*, No. 03-08-00760-CR, 2009 Tex. App. LEXIS 8185, at *1─2 (Tex. App.─Austin Oct. 23, 2009, no pet. h.) (mem. op., not designated for publication).  Our sense is this statute, and the issues herein touched upon, albeit briefly, have yet to be fully discussed by Texas courts and appellants.

We affirm the judgment and conviction.


Josh R. Morriss, III
Chief Justice

Date Submitted:     January 13, 2010
Date Decided:       February 10, 2010

Publish